```
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:13CR431-1 |
| | ) | |
| JUROTHER LEE ALSTON, JR. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on the defendant's Motion for Release (Docket Entry 13). (See Docket Entry dated Feb. 19, 2014.) For the reasons that follow, the Court denies that Motion.

BACKGROUND

A federal grand jury for this district indicted the defendant for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). (Docket Entry 1.) The case thereafter came before the Court for a hearing on an oral motion for detention by the United States, pursuant to 18 U.S.C. § 3142(f)(1)(E). (See Docket Entry dated Dec. 30, 2013.) After that hearing, the Court (per the undersigned United States Magistrate Judge) ordered the defendant's detention because clear and convincing evidence established that no available release conditions would reasonably assure the safety of the community. (See id.; Docket Entry 9.) Subsequently, the defendant pleaded guilty as charged, whereupon the Court (per Senior United States District Judge N. Carlton Tilley, Jr.) found a factual basis and set a sentencing date. (See Docket Entry dated Feb. 5, 2014; see also Docket Entries 10, 12.) The defendant thereafter filed the instant Motion. (See Docket Entry 13.)

DISCUSSION

Via his instant Motion, the defendant "prays for an order that he be released from custody, pending the sentencing hearing in this matter, under such conditions as the [C]ourt deems proper." (Id. at 3.) As factual support for that request, the instant Motion cites the following:

1) due to injuries incurred in a shooting approximately four and a half months before the instant offense, the defendant "has a blood clot in his lungs for which he takes blood thinners . . . [and] has a metal rod and screws in his back" (id. at 1);

2) "[a]t the time of [the] [d]efendant's arrest, he was undergoing treatment at Duke Medical Center for his injuries, including physical therapy" (id. at 1-2);

3) "as a result of being incarcerated, the [d]efendant has missed numerous appointments with doctors and has received letters indicating his treatment will be discontinued if he misses additional appointments" (id. at 2);[1]

---

[1] The defendant attached to his instant Motion various documents, including a letter from two pharmacists dated January 9, 2014, referencing two "scheduled anticoagulation appointment[s]" he recently missed and warning him that "[f]ailure to reschedule an appointment may result in dismissal from the Duke Outpatient anticoagulation service." (Docket Entry 13 at 7; see also id. at 6 (documenting third "Pharmacist Anticoag Mtg" from period of his federal detention).) Other documents attached to the instant Motion indicate that, while in federal custody, the defendant had scheduled appointments for a CT scan and a doctor visit at the Duke Clinic Trauma Surgery Department. (See id. at 5, 8.)

4) "[t]he [d]efendant desperately needs to continue with his medical treatments as scheduled in order to maximize his recovery from his injuries" (id.);

5) "[i]t would work an undue hardship on the Marshal's [S]ervice and the [d]efendant for the Marshals to have to transport the [d]efendant to and from his treatments" (id.); and

6) the defendant's girlfriend and mother "have agreed to serve as third party custodians" (id.; see also id. at 2-3 (stating that "[P]robation [O]ffice previously investigated [his girlfriend] and found her to be a suitable third party custodian").

The defendant's instant Motion, however, does not identify the legal authority under which he seeks release pending sentencing. (See id. at 1-3.) Nor has independent research identified any lawful basis for release. First, because the defendant has pleaded guilty, he no longer retains a right to reopen his detention hearing. See 18 U.S.C. § 3142(f) (limiting option for reopening detention hearing, inter alia, to "time before trial"). Second, now that the defendant has pleaded guilty and awaits sentencing, the Court could not release him "unless [it] finds by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ." 18 U.S.C. § 3143(a)(1).[2] Moreover, "[t]he

---

[2] This standard does not apply to a defendant "for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment," 18 U.S.C. § 3143(a)(1); the defendant's instant Motion, however, neither claims that he faces
(continued...)

burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c).

In his instant Motion, the defendant asserts in conclusory fashion that he "does not pose a risk of flight or danger to the community." (Docket Entry 13 at 2.) The Court, however, previously determined otherwise. (<u>See</u> Docket Entry 9 at 5.) Specifically, before the defendant's entry of a guilty plea (at a juncture when the United States held the burden of persuasion), the Court concluded that the record established by clear and convincing evidence that the defendant posed a risk of danger to the community insufficiently addressed by available release conditions, including home incarceration with electronic monitoring and a third-party custodian. (<u>See</u> <u>id.</u>) Nothing in the instant Motion alters that conclusion or, more importantly, given the legal standard now applicable, would establish by clear and convincing evidence that the defendant does <u>not</u> pose a danger to the community.

To the extent the defendant intended to seek relief via the "exceptional reasons" language of 18 U.S.C. § 3145(c), "that

---

[2](...continued)
a non-custodial guideline range (<u>see</u> Docket Entry 13), nor likely could do so, given that a minimum base offense level of 14 applies to possession of a firearm by a felon offenses, <u>see</u> U.S.S.G. § 2K2.1(a)(6)(A), which, even if reduced by two levels for acceptance of responsibility, <u>see</u> U.S.S.G. § 3E1.1(a), would result in an adjusted offense level of 12, which, even at Criminal History Category I, would produce a Zone C guideline range of 10-16 months, <u>see</u> U.S.S.G. Sentencing Table, which would call for at least five months of active prison time, <u>see</u> U.S.S.G. § 5C1.1(d).

section does not apply to [him]. It relates only to 'a person subject to detention pursuant to section 3143(a)(2) or (b)(2), <u>and</u> who meets the conditions of release set forth in section 3143(a)(1) or (b)(1).'" United States v. Jones, 939 F. Supp. 2d 6, 10 (D.D.C. 2013) (quoting 18 U.S.C. § 3145(c)) (emphasis added). Because the defendant does not meet those criteria, he cannot obtain release under Section 3145(c).

Paragraphs (1) and (2) of Section 3143(b) concern "sentenced" defendants who have "filed an appeal or a petition for a writ of certiorari," 18 U.S.C. § 3143(b)(1) & (2), and thus the defendant qualifies as neither "a person subject to detention pursuant to" Section 3143(b)(2), 18 U.S.C. § 3145(c), nor one "who meets the conditions of release of" Section 3143(b)(1), 18 U.S.C. § 3145(c). Further, even if Section 3143(a)(2), which pertains only to defendants "found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142," 18 U.S.C. § 3143(a)(2), applied in this case (which seems doubtful),[3] the defendant (for reasons set forth above) does not

---

[3] Section 3142(f)(1)(B) applies only to "an offense for which the maximum sentence is life imprisonment or death," 18 U.S.C. § 3142(f)(1)(B), and the defendant's instant offense of conviction (18 U.S.C. § 922(g)(1)) carries only a 10-year maximum prison term, see 18 U.S.C. § 924(a)(2). Section 3142(f)(1)(C) applies only to certain drug offenses, 18 U.S.C. § 3142(f)(1)(C), and thus not to the defendant's instant firearm offense, see 18 U.S.C. § 922(g)(1). That leaves Section 3142(f)(1)(A) as the only potentially applicable option for bringing the defendant within the reach of Section 3143(a)(2). As noted above, the defendant pleaded guilty to possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) and, therefore, the statute-specific offenses in
(continued...)

"meet[] the conditions of release set forth in section 3143(a)(1)," 18 U.S.C. § 3145(c). See Jones, 939 F. Supp. 2d at 10 ("[Sections]

---

³(...continued)
Section 3142(f)(1)(A) (i.e., "violation of section 1591 [and] an offense listed in section 2332b(g)(5)(B)") do not apply. See 18 U.S.C. §§ 1591, 2332b(g)(5)(B). The applicability of Section 3143(a)(2) here thus comes down to whether a violation of Section 922(g)(1) constitutes a "crime of violence" under Section 3142(f)(1)(A), which the pertinent section of the Bail Reform Act defines as:

> (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or
>
> (C) any felony under chapter 109A [18 U.S.C. §§ 2241 et seq.], 110 [18 U.S.C. §§ 2251 et seq.], or 117 [18 U.S.C. §§ 2421 et seq.]

18 U.S.C. § 3156(a)(4). "Subpart C is irrelevant here [because Section 922(g) does not fall within any of the cited chapters], as is subpart A because . . . use of a firearm is not an element of [Section] 922(g), which encompasses mere possession." United States v. Singleton, 182 F.3d 7, 10 (D.C. Cir. 1999). Only Subpart B therefore remains and, as to it, the question becomes "whether the 'nature' of an offense under § 922(g) is such that a 'substantial risk' of violence arises 'in the course of committing the offense.'" Id. It does not appear that the Fourth Circuit has addressed this precise issue in this specific context, but "[m]any other circuit courts have provided thoughtful discussions on the nature of the felon-in-possession offense and the substantiality of the risk. The majority of these courts have determined that a § 922(g)(1) offense does not satisfy these elements." United States v. Ingle, 454 F.3d 1082, 1085-86 (10th Cir. 2006). Moreover, in an another context, the Fourth Circuit has held that the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" generally does not encompass Section 922(g)(1) offenses. See United States v. Johnson, 953 F.2d 110, 112-15 (4th Cir. 1991). It thus seems highly unlikely that, in this Circuit, Section 922(g)(1) would qualify as a "crime of violence" within the meaning of Section 3156(a)(4).

3143(a)(1) and (b)(1) only permit release if the court finds by clear and convincing evidence that the defendant does not pose a danger to the safety of the community. This [c]ourt finds, as it has consistently done in the past, that [the] defendant cannot satisfy this burden.").

CONCLUSION

The defendant has not shown any lawful basis for the relief he requests.[4]

**IT IS THEREFORE ORDERED** that the defendant's Motion for Release (Docket Entry 13) is **DENIED**.

/s/ L. Patrick Auld<br>**L. Patrick Auld**<br>**United States Magistrate Judge**

February 24, 2014

---

[4] In reaching that conclusion, the Court does not disregard the defendant's legitimate desire, in his words, "to maximize his recovery from his injuries" (Docket Entry 13 at 2). However, "[t]he law [i]s clear – and the Court is obligated to faithfully apply the law." Taylor v. Collins, 574 F. Supp. 1554, 1562 (E.D. Mich. 1983). Nor does the Court's decision leave the defendant without access to appropriate medical care. To the contrary, consistent with the guarantees of the United States Constitution, DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989) (recognizing right of detainees and prisoners to provision for their "basic human needs – e.g., . . . medical care"), the United States Marshals Service ("USMS") apparently has adopted a stated policy of "'ensur[ing] that all USMS prisoners receive medically necessary health care services,'" Cosby v. United States Marshals Serv., 520 F. App'x 819, 821 (11th Cir. 2013) (quoting USMS Directive for Prisoner Operations 9.4). The Court has no reason to doubt that the USMS will live up to that commitment here.